IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED

NOV 15 2022

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

MICHELE PITTS-BROWN,

    Plaintiff,

v.                                     CIVIL ACTION NO. 2:21-cv-232

RENAL TREATMENT CENTERS-
MID ATLANTIC, INC.,

    Defendant.

*MEMORANDUM OPINION AND ORDER*

Before the Court is Defendant Renal Treatment Centers-Mid Atlantic, Inc.'s ("Defendant" or "RTC") Motion to Dismiss. Def.'s Mot. Dismiss, ECF No. 22. Defendant moves to dismiss, in its entirety, Plaintiff Michele Pitts-Brown's ("Plaintiff" or "Pitts-Brown") Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.*; Def.'s Mem. Supp. Mot. Dismiss, ECF No. 23 ("Def.'s Mem. Supp."). The Court has considered the memoranda of the parties and this matter is now ripe for determination. *See* Def.'s Mem. Supp.; Pl.'s Mem. Opp'n to Def.'s Mot. Dismiss, ECF No. 24 ("Pl.'s Mem. Opp'n"); Def.'s Reply to Pl.'s Mem. Opp'n to Def.'s Mot. Dismiss, ECF No. 25 ("Def.'s Reply"). Upon review, the Court finds that a hearing on this Motion is not necessary. *See* E.D. Va. Local Civ. R. 7(J). For the reasons stated herein, Defendant's Motion to Dismiss is **GRANTED IN PART and DENIED IN PART.**

            **I.**    **FACTUAL AND PROCEDURAL HISTORY**

On April 27, 2021, Plaintiff filed a *pro se* Complaint against Defendant. Compl., ECF No. 1. On September 5, 2021, Plaintiff filed an Amended Complaint against Defendant, alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the

1

Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("Rehabilitation Act"). Am. Compl., ECF No. 14. On October 5, 2021, Defendant filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, Motion to Strike Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f). Def.'s Mot. Dismiss or Alt. Mot. Strike, ECF No. 15. The Court granted the Motion to Dismiss, rendering the Motion to Strike Moot. Memo Order Granting Mot. to Dismiss, ECF No. 20. The Court granted Plaintiff leave to file a Second Amended Complaint. *Id.*

On September 2, 2022, Plaintiff filed a Second Amended Complaint ("SAC"). Second Am. Compl., ECF No. 21. On September 16, 2022, Defendant moved to dismiss, in its entirety, Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Def.'s Mem. Supp. Mot. Dismiss. Relevant to Defendant's Motion to Dismiss and stated in the light most favorable to Plaintiff, the following facts are drawn from the Second Amended Complaint. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Plaintiff is an adult female resident of the City of Virginia Beach, Virginia. Second Am. Compl. at ¶ 8. Defendant is a corporation owned by DaVITA, Inc. that does business in Virginia. *Id.* at ¶ 9. At all times relevant to the Second Amended Complaint, Defendant operated a business that was engaged in an industry affecting commerce and employed more than fifteen employees. *Id.* at ¶ 10. At all times relevant to the Second Amended Complaint, Defendant received federal grants, federal contracts, or similar other financial assistance. *Id.* at ¶ 11. Plaintiff worked as a Licensed Master Social Worker II ("MSW II") at Defendant's Lehigh Dialysis Center in Norfolk, Virginia, from 2011 to June 4, 2021. *Id.* at ¶ 12. During this time, Plaintiff performed the essential functions of her job with reasonable accommodations and never received a negative performance evaluation, meeting the expectations of the job. *Id.* at ¶¶ 13-14. During this time, Plaintiff suffered

from a visual disability that substantially limited her ability to see peripheral areas and substantially limited her depth perception, though it did not render her totally blind. *Id.* at ¶ 15.

In May of 2016, Defendant was given written notice of Plaintiff's impairment and was aware that she was requesting an accommodation through the IT Department. *Id.* at ¶¶ 16-17. Defendant modified some portions of Plaintiff's desktop computer but not others. *Id.* at ¶ 18. Defendant did not modify any of the Defendant specific portals, provide magnification equipment, or lighting. *Id.* at ¶ 19. Plaintiff alleges by not modifying any of the Defendant specific portals, not providing magnification, and not providing lighting, Defendant failed to provide Plaintiff with an effective accommodation. *Id.* at ¶ 20. Around late December 2019 or early January of 2020, Plaintiff could no longer perform key aspects of her job because Plaintiff could not adequately read her computer screen without the requested modifications to Defendant specific portals and without proper magnification equipment. *Id.* at ¶ 21. Plaintiff believes that around December of 2019 and for several months after, Defendant had vacant jobs that Plaintiff was qualified to perform. *Id.* at ¶ 22.

In late 2019 or early 2020, Plaintiff applied for short term disability because she could no longer safely work for Defendant. *Id.* at ¶ 23. Plaintiff's last day worked was January 4, 2020 and shortly thereafter she was placed on a leave of absence with short-term disability benefits effective January 6, 2020. *Id.* at ¶ 24. On February 25, 2020, Plaintiff completed and signed a Charge of Discrimination with the EEOC, describing Plaintiff's desire and efforts to be transferred to a new position among other things. *Id.* at ¶ 25. In this document, Plaintiff also stated that "[i]n December 2019, [Plaintiff] had no other option but to request short term disability because [Defendant] would not engage with [Plaintiff]." *Id.* at ¶ 26. Around June 2020, Defendant transitioned Plaintiff's leave of absence pay from short-term disability benefits to Long Term Disability benefits ("LTD") and

required her to apply for Social Security Disability Insurance ("SSDI"). *Id.* at ¶¶ 27-28. In June 2020, Defendant's agents prepared an application for SSDI for Plaintiff to sign, including a section whereby Plaintiff appointed Defendant's agents to act as her representative in connection with her claim for benefits. *Id.* at ¶¶ 29-30. The SSDI application sought benefits on the grounds that, if Plaintiff was not given an effective accommodation to help her, she could not do any job in the economic marketplace. *Id.* at ¶ 31.

On August 5, 2020, Defendant submitted its position statement to EEOC, describing Plaintiff's efforts to be transferred to a new position among other things. *Id.* at ¶¶ 32-33. Around August 15, 2020, Defendant continued Plaintiff's leave of absence but changed her benefits to LTD pay effective July 4, 2020. *Id.* at ¶ 34. On September 6, 2020, Plaintiff responded to Defendant's position statement with information to EEOC that included her desire and efforts to be transferred to a different or vacant job within the Defendant's organization so that she could continue to work. *Id.* at ¶ 35. On January 29, 2021, the EEOC completed its investigation and issued Plaintiff a right to sue notice. *Id.* at ¶ 36.

On April 29, 2021, Defendant requested an update regarding Plaintiff's ability to work. *Id.* at ¶ 37. On or about May 10, 2021, one of Plaintiff's doctors sent Defendant a report stating that Plaintiff could not return to work without a reasonable accommodation and that he did not know enough about the work duties to identify a specific accommodation. *Id.* at ¶ 38. Plaintiff alleges that before May 10, 2021 Defendant was on notice of a recommendation that Defendant provide Plaintiff with a RUBY 7 magnification device with specific technology that could effectively accommodate Plaintiff's impairment and allow her to perform the essential functions of her job. *Id.* At all times relevant, Defendant had a policy or practice of limiting medical leaves to a fixed period. *Id.* at ¶ 39. On June 4, 2021, Defendant terminated Plaintiff's employment on June 4, 2021

because of a policy that only allowed a limited period of leave. *Id.* at ¶ 40. Accordingly, Plaintiff asserts three counts against Defendant:

Count 1. Failure to Accommodate in Violation of the ADA (Second Am. Compl. at ¶¶ 47-51);

Count 2. Failure to Transfer in Violation of the ADA (Second Am. Compl. at ¶¶ 52-56);

Count 3. Violation of the Rehabilitation Act (Second Am. Compl. at ¶¶ 57-65).

Defendant moves to dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Def.'s Mot. Dismiss; Def.'s Mem. Supp.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. For the purposes of a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A complaint need not contain "detailed factual allegations" in order to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949-50 (2009). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557). To achieve factual plausibility, plaintiffs must allege more than "naked assertions . . . without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Id*. The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has held that, "while a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level." *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30, 132 (2012) (cleaned up).

### III. DISCUSSION

Defendant moves to dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Def.'s Mem. Supp. In support, Defendant argues that the Second Amended Complaint is procedurally and substantively deficient. *See id.* at 6-23. The Court addresses the challenges to each Count separately.

#### A. Count One – Failure to Accommodate in Violation of the ADA

Defendant challenges Count One in two respects. First, Defendant argues that Plaintiff's allegations in the SAC exceed the allegations in Plaintiff's EEOC Charge and Submission. Def.'s Mem. Supp. at 7-10. Second, Defendant argues that Plaintiff fails to establish a *prima facie* failure to accommodate claim. *Id.* at 10-13.

1. Count One: Scope of EEOC Charge and Submission

First, Defendant argues that the Court must dismiss Plaintiff's failure to accommodate claims because Plaintiff's allegations in the SAC exceed the allegations in Plaintiff's EEOC Charge and Submission.[1] Def.'s Mem. Supp. at 13-14. The ADA incorporates the enforcement procedures of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, including the requirement that a plaintiff must exhaust her administrative remedies by filing a charge with the Equal Employment Opportunity Commission (EEOC) before filing suit in federal court. *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012). This requirement "ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). "The EEOC charge defines the scope of the plaintiff's right to institute a civil suit." *Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). If the employee subsequently files suit in federal court, she can only maintain "those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint." *Evans v. Techs. Appls. & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996).

Congress' intended purpose for the exhaustion requirement was "to serve the primary purposes of notice and conciliation." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). While striving to accomplish these purposes, the Fourth Circuit has made clear that the terms of an EEOC charge should be construed "liberally" because "lawyers do not typically complete the administrative charges." *Id.* at 509. The goal of the district court should also be to "strike a balance

---

[1] Plaintiff does not attach copies of her EEOC Charge of Discrimination as an exhibit to her Second Amended Complaint. However, Plaintiff does reference this document. *See* Second Am. Compl. at ¶¶ 5, 26. When evaluating a motion pursuant to Rule 12(b)(6), courts may rely upon documents attached as exhibits or incorporated by reference in the complaint. *Simons*, 762 F.2d at 31. Accordingly, although the Court recognizes that the Complaint is not the operative pleading and does not treat it as such, it considers only the attached documents incorporated by reference in the Second Amended Complaint.

7

between providing notice to employers and ... ensuring that plaintiffs are not tripped up over technicalities." *Sydnor v. Fairfax Cnty., Va.,* 681 F.3d 591, 594 (4th Cir.2012). Furthermore, "the exhaustion requirement should not become a tripwire for hapless plaintiffs." *Id.* The purpose is "to stop clever parties from circumventing statutory commands, ... not [to] erect insurmountable barriers to litigation out of overly technical concerns." *Id.*

Accordingly, a charge is acceptable only if it is "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b) (2004). While it is important that the claims are "reasonably related," they need not be "precisely the same." *Sydnor,* 681 F.3d at 595.

Plaintiff filed her EEOC Charge of Discrimination on February 25, 2020. *See* Compl. at Ex. 1, 1.[2] Defendant contends that Plaintiff only requested the modification to Plaintiff's "size and color of her computer screen" before the EEOC. Def.'s Mem. Supp. at 9. Defendant further contends that Plaintiff's failure to accommodate request is limited to Defendant's ability to modify her computer. Def.'s Mem. Supp. at 9-10. Therefore, Defendant contends that Plaintiff's September 6, 2020 submission, including any requests for "magnification equipment or lighting" are not properly before this Court. Def.'s Mem. Supp. at 10.

In the September 6, 2020 submission, Plaintiff stated that she asked the IT Department if they could "modify the size and color of her computer screen." *Id.* at Ex. B. In the same submission, Plaintiff explains that the IT Department was "unable to change the [Defendant]-specific databases" that Plaintiff used on a daily basis. *Id.* Even though Defendant essentially argues that Plaintiff needs to use the same words as in her EEOC charge to survive this motion, but Plaintiff does not. Clearly, "magnification equipment or lighting" are reasonably related to

---

[2] *Id.*

8

requests to modify the size and the color of her computer screen.

Accordingly, to the extent that the allegations in the SAC exceed the allegations in Plaintiff's EEOC Charge and Submission, Defendant's Motion to Dismiss is **DENIED** as to Count One.

2. Count One: ADA Failure to Accommodate

Second, Defendant argues that Plaintiff fails to establish a *prima facie* case for failure to accommodate. Def.'s Mem. Supp. at 10-13. The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Such unlawful discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business." *Id.* at § 12112(b)(5)(A). To establish a *prima facie* claim for failure to accommodate under the ADA, a plaintiff must prove: "(1) that she had a disability within the statutory meaning; (2) that the employer knew of her disability; (3) that a reasonable accommodation would permit her to perform the essential functions of the position; and (4) that the employer refused to make the accommodation." *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 959 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 767 (2022).

Defendant only challenges that Plaintiff has not established the fourth element of this claim, arguing that Plaintiff's allegations demonstrate that Defendant engaged in the interactive process of identifying a reasonable accommodation and Defendant provided her with accommodations. Def.'s Mem. Supp. at 10-14. "The duty to engage in an interactive process to identify a reasonable accommodation is generally triggered when an employee communicates to his employer his disability and his desire for an accommodation for that disability." *Wilson v.*

*Dollar Gen. Corp.*, 717 F.3d 337, 346–47 (4th Cir. 2013) (collecting cases).

A "reasonable accommodation" may include "making existing facilities used by employees readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12111(9)(A). The ADA lists several examples, such as: "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices . . . and other similar accommodations." *Id.* at § 12111(9)(B); *see also* 29 C.F.R. § 1630.2(o). "An employer may reasonably accommodate an employee without providing the exact accommodation that the employee requested . . . [but rather] may provide an alternative." *Reyazuddin v. Montgomery Cnty., Maryland*, 789 F.3d 407, 415 (4th Cir. 2015). However, the employer's discretion is not boundless. An employer must provide an accommodation that provides the employee with "an opportunity to attain the same level of performance as is available to nondisabled employees having similar skills and abilities." *Id.* at 416 (quoting H.R.Rep. No. 101-485, pt. 2, at 66 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 349, (citation omitted)).

Under Count One, Plaintiff alleges that she "requested a reasonable accommodation," but Defendant failed to provide her with a reasonable accommodation. Second Am. Compl. at ¶¶ 46-47. Within that time period, Plaintiff alleges that she asked Defendant's IT Department for technical accommodations to enable her to read on her computer screen. Second Am. Compl. at ¶ 17. Plaintiff's allegations reveal that Defendant provided her with the accommodation only in part. *See id.* at ¶¶ 18-19. Regarding her request, Plaintiff alleges that Defendant "failed to provide [Plaintiff] with an effective accommodation." *Id.* at ¶ 20. Defendant alleges that they granted Plaintiff's request for an accommodation and engaged in the interactive process. Def.'s Mem. Supp. at 12-13. In her opposition, Plaintiff argues that the issue of whether Defendant provided a reasonable accommodation, whether there was a break down in the interactive process, and

whether Plaintiff gave sufficient notice of her disability-related needs are affirmative defenses that are not appropriate at the motion to dismiss stage. Pl.'s Mem. Opp'n at 4-9.

Although Defendant was entitled to "reasonably accommodate [Plaintiff] without providing the exact accommodation that the employee requested," *Reyazuddin*, 789 F.3d at 415, "[a]n ineffective accommodation is not a reasonable accommodation." *Weeks v. Union Pac. R.R. Co.*, 137 F. Supp. 3d 1204, 1223 (E.D. Cal. 2015). The question of whether this accommodation was reasonable is one of fact for the jury that the Court cannot resolve at this stage of litigation. *Williams v. Virginia Polytechnic Inst. & State Univ.*, 451 F. Supp. 3d 467, 475 (E.D. Va. 2020); *see also Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823, 833 (4th Cir. 1994).

Thus, viewing the allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff establishes a *prima facie* claim for failure to accommodate in violation of the ADA with respect to Plaintiff's request to Defendant's IT Department for technical accommodations that would enable her to see or more easily see words on her computer screen. Accordingly, Defendant's Motion to Dismiss Count One of the Second Amended Complaint is **DENIED**.

### B. Count Two – Failure to Transfer in Violation of the ADA

Defendant brings three challenges to Count Two. Def.'s Mem. Supp. at 13-20. First, Defendant argues that because Plaintiff filed her Charge of Discrimination on February 25, 2020 her transfer requests prior to May 1, 2019 are untimely. *Id.* at 18-19. Second, Defendant argues that Plaintiff fails to plead sufficient facts to support a failure to transfer claim. *Id.* at 19-20. Third, Defendant argues that Plaintiff's did not request a transfer to remote positions as a reasonable accommodation. *Id.* at 12-18. The Court addresses each in turn.

1. Count Two: Timeliness

First, Defendant argues that Plaintiff's requests prior to May 1, 2019 are untimely. The

ADA requires that a plaintiff exhaust her administrative remedies through the EEOC before filing suit in federal court. *Sydnor*, 681 F.3d at 593. As stated above, this requirement "ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). Since Virginia is a deferral state Plaintiff "has 300 days from the last date of alleged discrimination to file a charge with the EEOC." *Bland v. Fairfax Cty,* 799 F. Supp. 2d 609, 611 (E.D. Va. 2011) (citations omitted). Moreover, "[i]f the 300-day 'statutory time period elapses between the allegedly discriminatory incident and the filing of the EEOC charge, the litigant is forever barred from [ADA] relief." *Id.* (citations omitted).

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court of the United States held that "discrete acts," such as "termination, failure to promote, denial of transfer, or refusal to hire," and "each retaliatory adverse employment decision" is a separate act and an administrative charge can cover only such "discrete acts" as those that " 'occurred' within the appropriate time period." 536 U.S. at 114; *See also Hill v. Hampstead Lester Morton Ct. Partners LP*, 581 F. App'x 178, 181 (4th Cir. 2014) (noting defendant's failure to accommodate constitutes a discrete act rather than an ongoing omission). In this case, Plaintiff filed her Charge of Discrimination February 25, 2020. For a claim of failure to transfer to be timely, it must have occurred on or after May 1, 2019.

In her Second Amended Complaint, Plaintiff never alleges that she requested a transfer as an accommodation after May 1, 2019. Second Amed. Compl. Instead, Plaintiff alleges that "upon information and belief" around December 2019 Defendant had vacant jobs that she was qualified to perform. *Id.* at 22. In her response, Plaintiff points to the fact that there were vacant positions in April 2017, April 2018, May 2018, and June 2018 to establish that a vacant position was open after

12

May 1, 2019. Pl.'s Mem. Opp'n at 12. Vacant positions a year before the alleged time at issue in the Second Amended Complaint is not sufficient to plead that there were vacant positions within the timeframe Plaintiff alleges.

In her Second Amended Complaint, Plaintiff further alleges that the charge of discrimination described Plaintiff's desire and efforts to be transferred to a new position. Second Am. Compl. at ¶ 25. However, the charge of discrimination only alleged that Plaintiff "was denied reasonable accommodations and available job positions." Compl. at Ex. 1, 1.[3] All requests for a change in position happened before May 1, 2019. Plaintiff has not alleged sufficient facts to show that Plaintiff asked for a transfer to a vacant position or that Defendant failed to transfer her to a vacant position after May 1, 2019.

Accordingly, Defendant's Motion to Dismiss Count Two is **GRANTED** based on Plaintiff's untimely request to transfer.

2. Count Two: *Prima Facie* Case for Failure to Transfer

Second, the Court does not have to address whether Plaintiff made a request to transfer as Plaintiff only relies on events before to May 1, 2019 to sustain her failure to transfer claim and Plaintiff has not alleged other facts to support a case for failure to transfer after May 1, 2019. Accordingly, Defendant's Motion to Dismiss Count Two is **GRANTED** with respect to Plaintiff's request to transfer claims prior to May 1, 2019.

**C. Count Three – Violation of the Rehabilitation Act**

Finally, Defendant raises one challenge to Count Three. Def.'s Mem. Supp. at 20-23. Defendant argues that Plaintiff fails to establish a *prima facie* case for the interference claim she brings under the Rehabilitation Act. *Id*. The Court addresses the challenge below.

---

[3] *See supra* note 1.

13

1. Section 504: Interference

Defendant challenges Count Three by arguing that Plaintiff fails to establish a *prima facie* case of failure to accommodate under the Rehabilitation Act. Def.'s Mem. Supp. at 16-20. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). As another district court in this circuit has noted, "[t]here are few appellate decisions construing this subsection." *Kelly v. Town of Abingdon*, 437 F.Supp.3d 517, 528 (W.D. Va. 2020).

The United States Courts of Appeals for the Seventh and Ninth Circuits recognized that the standard for establishing this claim is analogous to that for an anti-interference claim under the Fair Housing Act, 42 U.S.C. § 3617 ("FHA"), because the clauses in both statutes are identical. *Compare* 42 U.S.C. § 12203(b), *with* 42 U.S.C. § 3617; *Frakes v. Peoria Sch. Dist.* No. 150, 872 F.3d 545, 550-51 (7th Cir. 2017) ("Because the ADA anti-interference clause is identical to the anti-interference clause found in the FHA . . . we use the FHA framework to establish the legal standard for an ADA interference claim."); *Brown v. City of Tucson*, 336 F.3d 1181, 1190-93 (9th Cir. 2003) (finding that the construction and application of the ADA anti-interference provision "ought to be guided by our treatment of the FHA's interference provision . . . as well as similar provisions in the FMLA and NLRA").[4]

---

[4] When this question was before the United States Court of Appeals for the Eleventh Circuit and District of Columbia Circuit both declined to apply any framework. *See Atchison v. Bd. of Regents of Univ. Sys. of Georgia*, 802 F. App'x 495, 508 (11th Cir. 2020) (recognizing the standard set out in *Frakes* but finding it unnecessary to determine the proper standard in light of the facts presented); *Menoken v. Dhillon*, 975 F.3d 1, 10 (D.C. Cir. 2020) (recognizing the standard in *Frakes* and the standard requested by the EEOC in an amicus brief but finding it unnecessary to determine the proper standard in light of the facts presented). Here, both parties request an application of the *Frakes* standard as adopted by the Seventh and Ninth

Because the United States Court of Appeals for the Fourth Circuit has yet to opine on this issue, the Court follows the standard set forth by sister circuits. *See Kelly*, 437 F.Supp.3d at 528 (applying the *Frakes* standard); *Patel v. Credence Mgmt. Sols.*, No. 120-cv-427, 2021 WL 1439675, at *10 (E.D. Va. Mar. 15, 2021), *reconsideration denied*, No. 120-cv-427, 2021 WL 5447526 (E.D. Va. Nov. 22, 2021) (same); *Sowers v. Bassett Furniture Indus., Inc.*, No. 4:19-cv-39, 2021 WL 276169, at *9 (W.D. Va. Jan. 27, 2021) (same). To establish a *prima facie* case, "a plaintiff alleging an ADA interference claim must demonstrate that: (1) she engaged in activity statutorily protected by the ADA; (2) she was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of her protected activity; and (4) the defendants were motivated by an intent to discriminate." *Frakes*, 872 F.3d at 550–51. Defendant only contests the third and fourth elements.

On the third element, the ADA prohibits "interference" with statutory rights. In guidance promulgated in 2016, the EEOC articulated whether leave policies constitute interference of disability rights under the ADA. Even if a company has a leave policy where employees are only allowed to a take certain number of leave days, in order to be in accordance with the ADA and not interfere with rights afforded therein, the ADA requires the company to "make exceptions to their policies" in order to provide a reasonable accommodation. [5] Otherwise, fixed leave policies that do not allow exceptions for any reason constitutes interference with disability rights under the ADA.[6]

---

Circuits.
[5] U.S. Equal Employment Opportunity Commission, "Employer-Provided Leave and Americans with Disabilities Act", *EEOC.gov.*, May 9, 2016, https://www.eeoc.gov/laws/guidance/employer-provided-leave-and-americans-disabilities-act
[6] U.S. Equal Employment Opportunity Commission, "Questions and Answers: Enforcement Guidance on Retaliation and Related Issues", *EEOC.gov,* August 26, 2016, https://www.eeoc.gov/laws/guidance/questions-and-answers-enforcement-guidance-retaliation-and-related-

Here, Plaintiff asserts that Defendant had a policy or practice of limiting medical leaves of absence to a fixed period. Second Am. Compl. at ¶ 39. Further on June 4, 2021, Defendant advised Plaintiff that employment was terminated because it was Defendant's policy to only allow a fixed amount of leave. *Id.* at ¶ 40. Finally, Defendant interfered with Plaintiff's right to take a longer leave of absence when it terminated Plaintiff's employment on June 4, 2021 because she had exceeded the aforementioned fixed period of leave to which Defendant limited its employees. *Id.* at ¶ 40. This plausibly pleads the third element of an interference claim.

Further, Defendant improperly raises the defense that Plaintiff is not entitled to indefinite leave. Def.'s Mem. Supp. at 21-22. A motion to dismiss under Rule 12(b)(6) …does not resolve …the merits of a claim, or the applicability of defenses.'" *Carter v. Va. Dep't of Game and Inland Fisheries*, No. 3:16cv661, 2017 WL 4413192, at *9-10 (E.D. Va. Sept. 29, 2017) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Similar to the question of whether an accommodation was reasonable, the question of whether Defendant interfered with Plaintiff's enjoyment of her rights is one of fact for the jury that the Court cannot resolve at this stage of litigation. *Williams v. Virginia Polytechnic Inst. & State Univ.*, 451 F. Supp. 3d 467, 475 (E.D. Va. 2020); *see also Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823, 833 (4th Cir. 1994).

However, Plaintiff's claim nonetheless fails because she fails to allege any discriminatory intent. *Frakes*, 872 F.3d at 51; *See* Second Am. Compl. In *Bing v. Brivo Sys., LLC.*, 959 F.3d 605, 616 (4th Cir. 2020), the Circuit Court explained that a plaintiff is not required to plead a *prima facie* case of discrimination under the *McDonnell Douglas* framework. Rather, the complaint only needs to show "circumstances that raise a reasonable inference of unlawful discrimination." *Id.* at 616, n.8 (internal quotation marks and citations omitted).

---

issues

In her response, Plaintiff attempts to explain that certain facts show discriminatory intent. Pl.'s Mem. Opp'n. at 15. Plaintiff points to the allegations that Defendant terminated Plaintiff's employment because she had exceeded Defendant's fixed period of leave policy and the allegations that Defendant denied granting a transfer to a vacant job that existing during the relevant period as reasons to infer discriminatory intent. Second Amend. Compl. at ¶¶ 21-22, 62-63, 65. These allegations do not maintain circumstances that raise a reasonable inference of discrimination as Plaintiff fails to mention facts that discrimination motivated the Defendant's decision. Accordingly, Defendant's Motion to Dismiss Count III is **GRANTED**.

## I. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED in part and DENIED in part**. Defendant's Motion to Dismiss is **DENIED** as to Count One. Defendant's Motion to Dismiss is **GRANTED without prejudice** as to Counts Two and Three.

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED**.

Norfolk, Virginia
November 15, 2022

/s/
Raymond A. Jackson
United States District Judge

17